**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250614-U

Order filed April 8, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* W.R., | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| a Minor | ) | Kankakee County. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-25-0614 |
| | ) | Circuit No. 23-JA-40 |
| v. | ) | |
| | ) | |
| James K., | ) | |
| | ) | Honorable |
| Respondent-Appellant). | ) | J. Imani Drew, |
| | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HETTEL delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:   The circuit court did not err when it found the respondent to be an unfit parent.

¶ 2        The circuit court entered orders finding the respondent, James K., to be an unfit parent and terminating his parental rights to the minor, W.R. On appeal, James argues that the circuit court erred when it found him to be an unfit parent. We affirm.

¶ 3                              I. BACKGROUND

¶ 4          On September 13, 2023, Danielle R. gave birth to the minor. Two weeks later, the State filed a juvenile petition alleging that the minor was neglected due to an injurious environment because (1) Danielle tested positive for amphetamines at the time she gave birth; (2) the minor's meconium tested positive at birth for methamphetamine, amphetamine, cocaine, and tetrahydrocannabinol; (3) Danielle and James had histories of substance abuse; (4) James had two pending criminal cases, both for unlawful possession of methamphetamine; and (5) James had previously pled guilty in 2018 for manufacture/distribution of a look-alike substance and 2018 and 2019 for unlawful possession of methamphetamine. Based on the same allegations, the petition also claimed that the minor was neglected because his blood or urine contained a controlled substance or a metabolite thereof. The minor was taken into protective custody the same day.

¶ 5          In December 2023, the minor was found to be neglected based on the allegations contained in the petition as to the mother and the minor's exposure to drugs.

¶ 6          A dispositional hearing was held in April and May 2024, which resulted in James being found to be unable to care for the minor due to his criminal history and incarceration at the time. The court also noted James' history of substance abuse and mental health issues. The court also ordered James to: (1) obtain a substance abuse assessment and follow any related recommendations, (2) perform random drug drops, (3) participate in individual psychotherapy, (4) participate in parenting education services, (5) maintain consistent visitation with the minor, (6) maintain contact with the Department of Children and Family Services (DCFS) and its assigns, and (7) cooperate and comply with the requests of DCFS and its assigns.

¶ 7          James was released from prison on June 27, 2024.

¶ 8        On March 12, 2025, DCFS evaluated James on his tasks and gave him all unsatisfactory ratings. Regarding his parenting education task, he was referred for a class by DCFS but he did not appear at the intake appointment and did not follow up with DCFS afterward. He also failed to maintain consistent contact with DCFS. He did not sign his service plan or maintain contact with DCFS beyond a brief period when he was on house arrest, and he only attended one court date during the reporting period. Additionally, he also "failed to appear to appointment for tox screening and intake for services with outside service providers."

¶ 9        On April 30, 2025, the State filed a petition for termination of parental rights, alleging, *inter alia*, that James failed to make reasonable progress toward the return of the minor between June 1, 2024, and March 1, 2025. The petition also alleged James failed to maintain a reasonable degree of interest, concern, or responsibility toward the minor's welfare.

¶ 10       In July and August 2025, the circuit court held a hearing on the State's petition. DCFS child welfare advanced specialist Ashlan Wicks testified that she was assigned to the minor's case shortly after he was born. During the period between June 1 and September 2024, James did not maintain contact with DCFS. Wicks visited with James in June 2024 and informed him of the tasks he needed to perform, his next court date, and her phone number. She unsuccessfully tried contacting him again in the summer and did not have any other contact with him between June and September. James was referred to therapy in June and July 2024, but he did not participate. He was scheduled for visitation with the minor once every two weeks, but he did not attend any visits. James also did not participate in any toxicology screenings during the time period. She created James' service plan, which was entered into evidence.

¶ 11       DCFS child welfare specialist Christina Jordan testified that she was assigned to the minor's case in September 2024. From that time until March 1, 2025, James did not engage in

individual therapy, parenting classes, or a drug assessment, despite being referred twice for each program. James was also required to perform two random drug screenings during that time period, but he did not appear for either one. Further, Jordan testified that James did not visit at all with the minor during the time period. In addition, she testified that James had little to no contact with DCFS during the time period. She clarified that she had contact with James twice at his house and that James reached out to her once—in October 2024. On that occasion, James told her that he intended to go to the facility to which he was referred to start his program. Jordan learned that James did in fact appear at the facility once, but he did not start any of his services.

¶ 12     On cross-examination, Jordan acknowledged that James had a substance abuse assessment as a part of his incarceration.

¶ 13     James testified that while he was incarcerated, he took an eight- or twelve-week substance abuse program sometime between April or May and July 2024. Once he was out of prison, he had to submit to drug testing as a term of his mandatory supervised release (MSR). He was not sent back to prison for violating any terms of his MSR.

¶ 14     James alleged that he tried contacting the original caseworker after he was released from prison, but she did not respond because she had changed her phone number.

¶ 15     The circuit court issued its unfitness determination on September 4, 2025. The court found that the State had proven James unfit on both counts. More specifically, the court found that

> "The father failed to substantially fulfill his obligations under his service plan, including that he failed to meaningfully engage in services, including, but not limited to: the father did not participate in a substance abuse assessment and follow the recommendations, nor parenting classes, he did [sic] attend individual therapy, did not maintain contact with the agency, and did not visit with [the minor]."

4

¶ 16    The circuit court held a best interest hearing in October 2025, after which the court found it to be in the minor's best interest to terminate James' parental rights. James appealed.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, James argues that the circuit court erred when it found him to be an unfit parent.

¶ 19    Section 2-29(2) of the Juvenile Court Act of 1987 establishes a two-step process for involuntary termination of parental rights. 705 ILCS 5/2-29(2) (West 2022). First, the petitioner must prove, by clear and convincing evidence, that a parent is unfit. *Id.* § 2-29(2), (4); 750 ILCS 50/1(D) (West 2022). Second, the petitioner must prove that it is in the minor's best interest to terminate parental rights. 705 ILCS 5/2-29(2) (West 2022). Only the circuit court's unfitness determination is at issue in this appeal.

¶ 20    In relevant part, section 1(D)(m) provides that a parent may be found unfit if he or she fails "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987." 750 ILCS 50/1(D)(m) (West 2022). When a service plan has been established, the failure to make reasonable progress "includes the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during [the relevant nine-month period]." *Id.* The circuit court is in the best position to observe and evaluate the witnesses and their testimony; accordingly, we grant great deference to the court's unfitness determination. *In re Je.A.*, 2019 IL App (1st) 190467, ¶ 46. Thus, we will not disturb the court's unfitness determination unless it is against the manifest weight of the evidence, which occurs only when the opposite result is clearly evident. *Id.*

¶ 21    In this case, James argues that he took a substance abuse awareness class while he was incarcerated and that he took regular drug tests as a condition of his mandatory supervised release.

He also asserts that he visited with the minor during court dates while he was incarcerated. He claims that "[t]hese facts demonstrate measurable progress." We disagree.

¶ 22    James was incarcerated during the first 27 days of the relevant nine-month period. Even assuming that any the events he mentions occurred during those 27 days, he did essentially nothing toward completing his DCFS-supervised, court-ordered tasks once he was released from prison. Even the drug tests he allegedly took during his MSR period following his release from prison were unrelated to this case. Two DCFS caseworkers testified regarding their evaluation of James' progress on his tasks during the nine-month period between June 1, 2024, and March 1, 2025. He did not obtain a substance abuse assessment or follow any related recommendations. He did not perform any random drug drops. He did not participate in individual psychotherapy. He did not participate in parenting education services. He did not maintain consistent visitation with the minor. He did not maintain contact with DCFS or cooperate and comply with DCFS's requests. Under these circumstances, it was not against the manifest weight of the evidence for the circuit court to conclude that James was an unfit parent.

¶ 23    While only one ground of parental unfitness is necessary to support a circuit court's termination decision (*In re C.W.*, 199 Ill. 2d 198, 217 (2002)), we additionally hold that for the same reasons James failed to make reasonable progress, James additionally failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare under section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2022)).

¶ 24                                          III. CONCLUSION

¶ 25    The judgment of the circuit court of Kankakee County is affirmed.

¶ 26    Affirmed.